**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

FARM BUREAU PROPERTY
& CASUALTY INS. CO.,

Plaintiff,

v. No. 1:14-CV-00527-WJ/WPL

THOMAS L. HALE, III,

Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS,**
**and**
**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE**

THIS MATTER comes before the Court upon Defendant Thomas Hale's Motion for Dismissal or Stay, filed August 11, 2014 **(Doc. 6)**; and Plaintiff's Motion for summary Judgment, filed September 5, 2014 **(Doc. 15)**. Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is well-taken and shall be granted in that this case shall be DISMISSED WITHOUT PREJUDICE, and that Plaintiff's motion for summary judgment is denied at this time without prejudice.

**BACKGROUND**

This is a Complaint for Declaratory Relief filed by Plaintiff Farm Bureau Property & Casualty Insurance Company ("Farm Bureau" or "Plaintiff") involving a motor vehicle accident that occurred in May 2013. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. §1332. Mr. Hale and his wife Ellen Hale are Plaintiffs in an underlying parallel lawsuit

currently pending in the First Judicial District Court of the State of New Mexico ("underlying lawsuit" or "state court lawsuit").[1]

## I. The Accident and Policies

Defendant claims that the state court lawsuit addresses the same issues presented here and joins all necessary parties and additional causes of action to fully resolve all claims. The underlying lawsuit, as well as this federal case, arises from an accident that occurred when Mr. Hale was operating his 2009 Kawasaki motorcycle insured under a policy issued by Farm Bureau and a Toyota Matrix being driven by Cathy Jo Turner, a resident of Santa Fe, New Mexico. As a result of the allegedly unlawful and negligent acts of Ms. Turner, Mr. Hale has incurred over $300,000.00 in medical expenses and will continue to need medical treatment and incur medical in the future. Prior to the collision, Mr. and Mrs. Hale purchased a policy of insurance with Farm Bureau, Policy No. 7644518, from Farm Bureau's Albuquerque-based insurance agent, Al P. Aglialoro, who had been the Hales' insurance agent since 2007.[2] Ms. Turner's liability carrier tendered its policy limits to Mr. Hale, with permission from farm Bureau, and she is considered an uninsured/underinsured motorist ("UM/UIM") under New Mexico law and the terms of the Farm Bureau policy.

## II. Procedural Timeline[3]

---

[1] The action is captioned as *Thomas L. Hale and Ellen D. Hale v. Farm Bureau Property & Casualty Insurance Company, et al.,* No. D-101-CV-2014-01829, filed August 11`, 2014, attached as Exhibit A.

[2] Both Mr. and Mrs. Hale are plaintiffs in the state court lawsuit. In order to avoid confusion, the Court refers to Thomas Hale as "Defendant" and Farm Bureau as "Plaintiff" in this opinion, but refers to "The Hales" when referring to the couple as plaintiffs in the state court action.

[3] The factual narrative comes from the state court complaint, which includes portions of the policy at issue. *See, e.g.,* Doc. 6-1 at 14. The policy itself is filed as Exhibit A to the federal court complaint. The Court has not included specific citations to the relevant policy or policies because this Order does not address any of the merits of the claims, but whether the Court's consideration of the merits should be stayed or dismissed.

According to the underlying lawsuit pending in state court, following the collision, Mr. Hale's counsel contacted Farm Bureau regarding the UM/UIM coverage available under the policy purchased by the Hales. Mr. and Mrs. Hale's policy included UM/UIM coverage on each covered vehicle up to the liability limits of coverage on each of their five vehicles, which was $300,000 per person/$500,000 per accident. Farm Bureau's position was that Mr. Hale had UM/UIM coverage on the motorcycle involved in the collision in the amount of $300,000, but that Mr. Hale had rejected stacked UM/UIM coverage on the five vehicles covered under the Farm Bureau policy. Stacked UM/UIM coverage, which is required under New Mexico law unless an insurer obtains a valid written waiver or rejection of such coverage, on the Hales' five vehicles would have provided the Hales with stacked UM/UIM coverage in the amount of $1,500,000 per person and $2,500,000 per accident under the policy.

After evaluating Farm Bureau's policy and the rejection/waiver/selection of stacked UM/UIM coverage form ("Selection Form"), Mr. Hale's counsel wrote Farm Bureau's coverage counsel, Ms. Meena Allen, on September 25, 2013, summarizing the law and explaining that Mr. Hale had stacked coverage on all five of his vehicles because the policy and Selection Form did not comply with New Mexico law. On November 1, 2013, Mr. Hale's counsel wrote to Ms. Allen, explaining he had been waiting for a coverage decision from Farm Bureau for almost six weeks, needed a response on the coverage question, and that Farm Bureau's continued delay would force its insureds to file a lawsuit, which would necessarily include more than a declaratory judgment action. On November 8, 2013, Ms. Allen, on behalf of Farm Bureau, wrote Mr. Hale's counsel stating Farm Bureau believed it was in compliance with the law but recommended that the parties participate in a confidential mediation to resolve the claim rather than resorting to litigation. The Hales claim that they were dissuaded from filing a lawsuit as a

result of Farm Bureau's suggestion to mediate. As part of this process, the Hales were encouraged to prepare a demand letter providing an analysis of Mr. Hales's damages and supporting documentation in preparation for the proposed mediation, which they sent to Farm Bureau on May 2, 2014.

The Hales claim that Farm Bureau changed course after receipt of Mr. Hale's summary evaluation and demand. On June 2, 2014, new coverage counsel for Farm Bureau wrote Mr. Hale's counsel a letter that indicated, for the first time, that Farm Bureau was filing a complaint for declaratory judgment against its insured in New Mexico Federal District Court, which was also filed on June 2, 2014. The Hales contend the filing of a declaratory judgment action breached Farm Bureau's earlier agreement to proceed to mediation in order to avoid litigation. They contend that Farm Bureau changed its position from mediation to litigation only after receiving their 22- page settlement offer and thorough documentation of Mr. Hale's injuries.

The Hales filed suit (as Plaintiffs) in state court including causes of action beyond a declaratory judgment claim against Farm Bureau. The pivotal issue appears to turn on whether there was stacking coverage available to Mr. Hale. Plaintiff appears to be correct in stating that there is no dispute that if Defendant's alleged selection of non-stacked UM coverage and rejection of stacked UM coverage is valid and enforceable, Defendant has received all policy benefits to which he is entitled as a result of the accident.

The Hales claim that the stacking provision is ambiguous and that there was misrepresentation concerning the available coverage. They assert, inter alia, that Farm Bureau agents failed to inform them about the premium costs corresponding to each available level of stacked coverage, that the alleged written rejection of stacked coverage must be attached or made part of the policy under New Mexico law, and that when certain clauses are read in conjunction,

an insured received no benefit for selecting stacked coverage. Doc. 6-1, ¶¶ 76, 78 & 89. Farm Bureau's position is that the Hales purchased non-stacked UM coverage from Farm Bureau and rejected stacked UM coverage in writing, even though they now claim entitlement to stacked UM benefits in excess of $1 million.

Defendant claims that Farm Bureau engaged in dilatory tactics that prevented Mr. Hale from first filing his state court complaint. He asserts that Farm Bureau waited until it received the 22-page settlement letter on May 2, 2014, and then immediately filed this federal declaratory judgment action instead of engaging in pre-litigation mediation as it had suggested. Farm Bureau, on the other hand, contends that Defendant is the one responsible for shunning the mediation option, noting that it was not until six months *after* Farm Bureau first suggested mediation that Mr. Hale finally forwarded the settlement letter to Farm Bureau. Plaintiff also contends that the "tone and tenor" of the settlement letter indicated that Defendant was not interested in pursuing mediation. The letter failed to mention mediation or respond to Farm Bureau's proposed mediators, and also maintained that Mr. Hale's policy afforded stacked coverage of $1.5 million.

One month after receiving Mr. Hale's settlement letter, on June 2, 2014, Farm Bureau filed this declaratory judgment action, and a little more than two months later, the Hales filed the state court action. Farm Bureau contends that its decision to file this federal action was a deliberate decision after the Hales's failure to respond to Farm Bureau's suggestion of mediation and their exorbitant and unwavering claim to stacked UM coverage. Defendant claims that Farm Bureau aborted the mediation course, insisting that the proposed mediator suggestions were never an issue and that the settlement letter was a pre-mediation demand carried out at Farm Bureau's request. Further, the parties had already agreed to mediation, which could not

realistically commence prior to the Farm Bureau's review and discussions of the settlement letter. There are some differences of opinion as to which side made service on the other more difficult, *see* Doc. 26 at 3 and Doc. 16 at 5-6, but the Court is not inclined to become entangled in the question of which party is more at fault in veering off the mediation course. It does seem odd, however, that Farm Bureau filed this declaratory judgment action one month following receipt of Defendant's settlement letter, after it had already waited six months to receive it.

**DISCUSSION**

Defendant asks that the Court decline to exercise its jurisdiction and dismiss this action, or alternatively, stay this action pending resolution of the issue presented here by the First Judicial District Court of New Mexico.

**I. Legal Standard**

The question raised by Defendant's motion is whether this Court should abstain from exercising jurisdiction over this case. The Declaratory Judgment Act vests federal courts with power and competence to issue a declaration of rights. 28 U.S.C. § 2201. The Act provides that a court "**may** declare the rights and other legal relations of any interested party seeking such declaration." (emphasis added). While this statute vests the federal courts with power and competence to issue a declaration of rights, *see Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112, (1962) (per curiam), the question of whether this power should be exercised in a particular case is vested in the sound discretion of the district courts. *St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995) ("*Runyon"*). Thus, the Declaratory Judgment Act does not grant litigants an automatic right to a declaration. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942). In considering whether to exercise jurisdiction over this case, the Court is required to consider whether "the questions in controversy between the parties to the

federal suit . . . can better be settled in the proceeding pending in the state court." *See Brillhart*, 316 U.S. at 494; *see also Wilton v. Seven Falls Co*., 515 U.S. 277, 283 (1995) (framing question as "whether the claims of all parties in interest can satisfactorily be adjudicated in [the state court] proceeding" (quoting *Brillhart*, 316 U.S. at 495).

The Tenth Circuit has provided district courts with a list of non-exclusive factors to consider in evaluating whether to proceed with a declaratory judgment action. Those factors include:

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (citing *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir.1994)).

## II. Analysis Under the *Mhoon* Factors

Both parties claim that the *Mhoon* factors support their respective positions. In addition, Plaintiff contends that the Court should deny the motion and proceed with the case in federal court because (1) it was filed first, (2) Defendant failed to confer regarding filing the instant motion, and (3) the motion is an attempt to forum shop and avoid dispositive Tenth Circuit case law. The Court will incorporate a discussion on these contentions in its analysis under the *Mhoon* factors, although the second point can be summarily rejected. The Court will not deny Defendant's motion on its merits solely on the basis of failure to confer with Plaintiff regarding the filing of the instant motion. The local rules may be "waived by a Judge to avoid injustice." D.N.M.LR-Civ. 1.7. There would be an injustice in denying a motion that has merit,

particularly where denying the motion would entail proceeding on a case that should be stayed or dismissed, for whatever reason. Also, there does not seem much point or judicial economy in striking the offensive pleading and require Defendant to re-file after a good faith conferral with Plaintiff, particularly when Plaintiff's opposition to the motion is abundantly clear.

A. First Two *Mhoon* Factors

The first two *Mhoon* factors focus on "the degree of identity of parties and issues in the concurrent proceedings." *U.S. v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002). Defendant contends that the federal action filed by Farm Bureau will not settle the controversy as Plaintiffs' state court complaint includes claims for breach of contract and extra-contractual claims for unlawful conduct that are not part and parcel of the declaratory action in the federal case, including claims against the Farm Bureau agents who sold and renewed the Hales' coverage and against the claims handlers directly responsible for the handling of the Hales' claims. *See* Ex. A (State Court Complaint) at 24, ¶¶134-39; *Runyon*, 53 F.3d at 1169 (affirming district court decision to not retain jurisdiction where state court breach of contract action would necessarily resolve the coverage question in federal declaratory judgment action, and where coverage issue in federal action was identical to what would be a defense to the later-filed state court breach of contract action).

The central question in this case—and in the state court case, for that matter—is whether the Hales's written rejection of stacked UM coverage is enforceable. That question, however, cannot be answered without the Court first determining facts that are in dispute. Plaintiff maintains that that Mr. Hale rejected stacked UM coverage in writing and affirmed, through his signature, his election to purchase non-stacked U M coverage. This position short-circuits the factual inquiry that must be done before the Court can determine whether that signed option form

is enforceable, for example, issues based on alleged misrepresentations by the agent who had the Hales' sign a waiver of stacked UM/UIM coverage as to the amount and associated costs of UM/UIM coverage that was available for purchase. In the state court case, the Hales contend that the rejection or waiver of the stacking form is ambiguous and in violation of New Mexico law on its face, and that they were never advised by the Farm Bureau agent that they were rejecting or waiving UM/UIM coverage or the fact that waiver included stacked coverage. These facts relate to the claims of breach of contract and duty of good faith and fair dealing, which are pending in the state court claim but are not part of this federal lawsuit. The Plaintiff in the federal action is the same party that is being sued in the Hales's state court lawsuit. *Cmp. Runyon,* 53 F.3d at 1169 (distinguishing cases where insurer was not a party in any of the state court cases, and where the state court in each of those cases was simply determining tort liability rather than determining coverage under the insurance contract).

Here, the pending state court action involves the same parties. The state court action is more comprehensive that the federal declaratory judgment action, and seeks to resolve the coverage issue and includes claims which would resolve all of the factual disputes necessary in order to properly address the coverage issue. If the instant lawsuit is not stayed or dismissed, Plaintiffs will be forced to engage in parallel litigation in two different forums which necessarily results in duplication and waste of judicial resources.

Farm Bureau argues that the *Mhoon* factors do not demand a complete resolution of all potential issues and factual disputes between the parties, citing to *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269 (10th Cir. 1989). In *Kunkel,* the Tenth Circuit concluded that the federal district court's construction of the insured's policy limits clarified the parties' legal relations "beyond doubt," regardless of the existence of other issues pending in the state court litigation.

Plaintiff's reliance on *Kunkel* is misplaced. In that case, the other issues pending in the underlying state court litigation were separate and apart from the policy construction because the existence of coverage in that case depended on the outcome of a collateral action charging the accountant (who was the insured) with security law violations and on a determination that any liability he incurred was not excepted from the terms of the policy. In the instant case, the additional claims pending in the state court action are not collateral, but are central to the construction of the policy, and which need to be resolved before it can be determined whether Defendant's written rejection of stacked UM coverage is enforceable.

Plaintiff also argues that Defendant's naming of its alleged agents and employees is not relevant because the alleged omissions by these individuals (for instance, in not explaining the meaning of the option or waiver forms) concern the insured's subjective intent and state of mind which has no bearing on the central coverage dispute. This is not so. An assertion of misrepresentation will always have some connection to the state of mind of the one to whom the misrepresentation is made, even though the only issue is whether a misrepresentation is made. *See* NM UJI 13-1632.[4] It is well-settled that insurance agents and adjusters may be sued in their individual capacity for breach of common law and statutory duties. *See, e.g.*, New Mexico Trade Practices and Frauds Act ("TPFA"), NMSA 1978, § 59A-16-1 (2001) (providing insurance adjusters and agents are among the individuals subject to the duties under the TPFA); *Martinez v. Cornejo*, 2009-NMCA-011, ¶¶ 1, 19, 146 N.M. 223, 208 P.3d 443 (holding insurance adjusters and their managers, in addition to agents and insurers, may be individually sued because they are "persons" subject to the private right of action provision of the TPFA); *Dellaira v. Farmers Ins. Exch.*, 136 N.M. 552 (Ct.App. 2004) (holding adjusters have common

[4] UJI 13-1632 NMRA states that: "A material misrepresentation is an untrue statement which a party intends the other party to rely on and upon which the other party did in fact rely. A negligent misrepresentation is one where the speaker has no reasonable ground for believing that the statement was true."

law duty of good faith and fair dealing to insured); New Mexico Unfair Practices Act ("UPA"), NMSA 1978, § 57-12-2 (as amended) (demonstrating that the New Mexico UPA applies to "natural persons" in addition to companies). Without a resolution of the facts underlying the Hales's claims against Farm Bureau's agents, the Court cannot make a declaration of law in the matter of coverage or whether the Hales's written rejection of stacked UM coverage is enforceable.

Therefore, as to the first two *Mhoon* factors, the declaratory judgment action filed by Farm Bureau in this Court will not settle the controversy and would not adequately clarify the legal relations at issue. These first two factors weigh heavily in favor of Defendant in either dismissing or staying this action pending resolution of the issues presented to the state court.

B. Third *Mhoon* Factor: Purpose of Declaratory Remedy

The third factor considers whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata." Farm Bureau places much stock in the fact that while it filed this action first, it is the Hales's state court complaint that is "contrived" because the Hales "did not raise any dispute as to Farm Bureau's declaratory judgment action and did not confer with Farm Bureau regarding any grounds to dismiss this case." Doc. 16 at 6. Although there are some disputes regarding reasons for delay in proceeding with the pre-litigation medication, the time line favors Defendant on this factor. It appears undisputed that at some point the parties had agreed to explore mediation, and the Court has not been made aware of any definitive moment when the parties decided it was no longer a viable option. Plaintiff does not deny that the Hales generated the settlement letter at Farm Bureau's request or that it filed this federal action one month after getting the settlement letter. While Plaintiff points out that it waited six months for the Hales's settlement proposal, nothing is

said about whether Farm Bureau made any attempt to communicate about the mediation that the parties had supposedly agreed to before Farm Bureau proceeded to file this declaratory action.

Farm Bureau insists it did not engage in a "race" to the courthouse, citing as an example to *State Farm Fire & Cas. Co. v. Van Horn,* but that case is factually quite different because all relevant and material facts were undisputed. 139 F.3d 912, unpubl. opin. (10th Cir. 1998). The *Van Horn* case addressed the question of whether the insurer's policy cancellation notice complied with the policy provisions as well as Oklahoma law which controlled in that case. The only question was a legal one: whether it is a requirement that an insured receive *actual* notice of cancellation. Because there was no requirement of actual notice in either the policy or under Oklahoma law, there was no need for the district court to address any of the additional claims raised in the state court action. Such is not the case here, where the merits of other claims pending in state court—such as misrepresentation, alleged ambiguity of certain policy provisions—must be resolved in order to determine whether the Hales's written rejection of stacked UM coverage is valid and enforceable. Plaintiff argues that because there was nothing improper about its first-filed action, this Court should allow the case to proceed, citing to *Franklin Life Ins. v. Johnson*, 157 F.2d 653, 659 (10th Cir. 1946) which reversed the dismissal of a federal court action in favor of the state court action filed over two months later. However, the Tenth Circuit's decision in *Franklin Life* was not necessarily premised solely on the fact that the federal declaratory action was filed first, but rather because it recognized that "only a legal question remains." *Id.*[5] Again, this is not the case here.

In turn, Defendant relies on a case from this district where the court declined jurisdiction over a federal declaratory judgment action filed by an insurer and allowing the later-filed state

[5] Other cases cited by Plaintiff to follow a "first-filed" order of jurisdiction are not helpful because they deal with cases where both are filed in federal court and thus have no place in this analysis. Doc. 16 at 18.

court action to proceed. *See State Farm Ins. Co. v. Jimenez*, No. 11-CV-1122 BRB-SMV (March 6, 2012) (Doc. 12) (attached as Ex. C to motion). Plaintiff attempts to distinguish *Jimenez* by noting that the case arose out of a criminal issue. Doc. 16 at 19, n.4. However, as Defendant correctly notes, the court's decision in *Jimenez* did not rest on any "unique" or "criminal" issue, but rather its finding that the state court case was more comprehensive than the federal declaratory action, and was grounded in the same set of facts. Thus, even assuming that Farm Bureau did not engage in "procedural fencing" or a "race" to res judicata, the Tenth Circuit directive under *Mhoon* requires that the Court weigh all the relevant factors. Furthermore, the process of weighing all relevant factors does not mean that the first-filed action must always proceed. Thus far, consideration of the *Mhoon* factors weighs in favor of declining jurisdiction over this case.

C. Fourth *Mhoon* Factor: Friction Between Federal and State Courts

The fourth *Mhoon* factor concerns whether use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction. Plaintiff contends that state courts are not better suited to address matters of insurance coverage and for support, comments on the wealth of insurance litigation that has been fairly and fully adjudicated by federal courts. Notwithstanding this considerable number of insurance coverage cases that have been resolved by federal courts as a result of removal to federal court by insurers, the fact remains that the law that governs in these cases is the law of the forum state. *See Houston Gen. Ins. Co. v. Am. Fence Co.*, 115 F.3d 805, 806 (10th Cir. 1997) ("The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state."). While the state court complaint filed by the Hales seeks the same

declaratory relief as does Farm Bureau in this federal action (although under a state instead of federal statute), the eight other claims asserted are also based upon New Mexico state law.

Farm Bureau claims that Defendant is attempting to forum shop and avoid Tenth Circuit guidance on stacking coverage in *Jaramillo v. Government Employees Ins. Co.*, 2014 WL 3720258 (10th Cir. 2014). *Jaramillo* addressed several new Mexico cases involving anti-stacking clauses, including *Montano v. Allstate Indem. Co.*, 135 N.M. 681 (2004). In *Montano*, the New Mexico Supreme Court resolved "inherent ambiguities in anti-stacking clauses" by requiring insurers to obtain written rejections of stacking in order to limit its liability based on an anti-stacking provision in a policy. 135 N.M. at 686. Plaintiff contends that *Jaramillo* "confirmed [that] the holding in *Montano* applies only to anti-stacking policies that seek to preclude all stacking and is inapposite to insurance policies, like this one, that offer stacked UM coverage if so selected and paid for by the insured." Doc. 16 at 10.

The Court has considered *Jaramillo* and the related cases, and does not agree with Plaintiff that staying or dismissing this federal action allows the Hales to avoid the guidance of a Tenth Circuit case, for several reasons. First, *Jaramillo* is unpublished, and while it does provide some guidance on general stacking law, its findings are based on the same New Mexico cases that would govern the issues, whether here or in state court. Second, it is not quite accurate to characterize Defendant's legal position as being contrary to *Jaramillo*. Farm Bureau contends that *Jaramillo* precludes the Hales from going forward on their coverage issue based on the policy's stacking provisions. However, *Jaramillo* expressly noted that judicially imposed stacking in a policy occurs "only after the court finds an invalid rejection of UM/UIM coverage and reads that coverage into a policy." 2014 WL 3720258, *10 (citing *Arias n Arias v. Phoenix Indemnity Insurance Co*, 2013 WL 6494110 (N.M.Ct.App.2013), *cert. denied*, —— N.M. ——,

321 P.3d 935 (2014). *Jaramillo* explained, in the context of New Mexico stacking cases, that if a UM/UIM rejection is found to be invalid, the insured would at that point, and only at that point, also get the full benefit of stacking read into the policy. *Id.* at *11. The plaintiffs in *Jaramillo* lost because they "placed the metaphorical cart before the horse by insistence that stacking be read into a policy *before* reaching the issue of whether they validly rejected UM/UIM coverage." *Id.* The Tenth Circuit found that the district court correctly refused to consider the issue of stacking coverage because the plaintiffs had "validly rejected the option to purchase UM/UIM coverage" *Id.* at *10.

*Jaramillo* also discussed the requirements under New Mexico law for a valid rejection of UM/UIM coverage, as set forth under *Jordan v. Allstate Ins. Co.*, 149 N.M. 162 (2010), which are: (1) an offer to the insured to purchase UM/UIM coverage in an amount equal to the policy's liability limits; (2) information regarding corresponding premium charges for each available UM/UIM coverage choice; (3) the insured's "written rejection of UM/UIM coverage equal to the liability limits"; and (4) incorporation of that rejection into the policy such that the insured may fairly reconsider his decision. 149 N.M. at 169. The plaintiffs in *Jaramillo* contended that the waiver or option form was deficient because it did not "meaningfully allow the insured to understand how much UM/UIM coverage is being offered, or how much coverage is being given up, at the premium prices provided in the form." *Jaramaillo* at *12. They specifically claimed that the UM/UIM option form failed to inform the insured about the premium costs corresponding to the available levels of *stacked* coverage. The Tenth Circuit rejected the notion that the waiver form was invalid simply because it lacked "stacked-coverage arithmetic" showing the results of multiplying each available level of coverage by four. *Id.* at *12-13 (concluding that an insurer need not include a "discussion" or "explanation" of stacking

principles" on the waiver form in order for a rejection of such coverage to be valid) (citing *Jordan v. Allstate Ins. Co*., 149 N.M. 162 (2010)).

Defendant's challenges to the policy provisions are not foreclosed by *Jaramillo* at all. *Jaramillo* addressed only one issue based on one argument: whether an insurer's obligation to provide the insured with the premium costs for each available level of UM/UIM coverage (the second prong of the *Jordan* test) required that the insurer include premium costs for *stacked* coverage as well as each available level of UM/UIM coverage. *Jaramillo*, at *12. Here, however, in addition to asserting deficiencies in the option form, the Hales' state court complaint also asserts the existence of inherent ambiguities in the policy provisions which fail to clearly advise an insured of the full extent and options for purchase of UM/UIM coverage as well as stacked coverage. The Hales assert that these ambiguous provisions lead an insured to unknowingly opt to reject stacking coverage.[6]

The stay or dismissal of the federal action would not allow the Hales to avoid the "guidance" of *Jaramillo* because the findings in *Jaramillo* do not dispose of all the issues raised by the Hales in the state court action. It is clear that the state court case is more comprehensive than the federal action; that the relief sought here is only a part of the relief sought in the underlying state court lawsuit; and that the claims that must be resolved before the coverage issue can be determined are more appropriately determined in the state court action.

E. <u>Fifth *Mhoon* Factor: Alternative Remedy</u>

[6] *See*, *e.g*., Doc. 6-1 (state court complaint), ¶ 89 ("When the Limits of Insurance clause is read together with the Stacking Rejected clause, as Farm Bureau interprets the Stacking Rejected clause, an insured receives no benefit for selecting stacked coverage"); ¶ 79, ¶80 (waiver of stacking is deficient because "it does not meaningfully allow an insured. . . to understand how much UM/UIM coverage is being offered. . . ." ¶ 93 (Farm Bureau failed to incorporate waiver/rejection form into the policy "in a way that afforded the Hales a fair opportunity to reconsider any decision to reject UM/UIM coverage"); ¶119 ("[Farm Bureau agents and employees] misrepresented to their insured pertinent facts or policy provisions relating to coverages at issue").

Given the Court's findings on the other *Mhoon* factors, it seems obvious that the state court proceeding provides a more efficient and comprehensive remedy. In considering whether to decline jurisdiction, the Court should ask "whether there is such a plain, adequate and speedy remedy afforded in the pending state court action, that a declaratory judgment action will serve no useful purpose." *ARW Exploration Corp. v. Aguirre,* 947 F.2d 450, 454 (10th Cir. 1991). Plaintiff states that a declaration in Farm Bureau's favor "will negate all of the claims in the [state court action] and resolve the entirety of this dispute." Doc. 16 at 21. Plaintiff neatly ignores the fact that before the Court would be able to issue a declaration in Farm Bureau's favor, the other claims raised in the Hales's state court case must first be addressed and resolved. The federal declaratory action has no "useful purpose" if the Hales were forced to engage in parallel litigation in two different forums in order to resolve the issues that need to be decided—which is most certainly what must happen if the Court exercises jurisdiction over this case. However, the state court case will resolve all claims at issue among the parties. Thus, declining jurisdiction over this case and allowing the state court case to be litigated *is* the "adequate and speedy remedy," and the Court concludes that declining jurisdiction is the proper course to take.

**III. Stay or Dismissal**

Defendant seeks dismissal of the federal action, or in the alternative, a stay pending resolution of the issue presented in the state court action. Defendant provides no reason for why the case should be stayed instead of dismissed, or vice versa. Farm Bureau has filed a Motion for Summary Judgment, which is pending before the Court in this federal action (Doc. 15). The Court finds no reason to stay the case when it is expected that the state court litigation would resolve the issue and thus, there would be no need for the Court to consider the motion. Accordingly, the Court DISMISSES this case WITHOUT PREJUDICE, pending adjudication of

the coverage issue in the New Mexico state court. In the unlikely event the state court action fails, for any reason, to resolve the coverage controversy prior to the state court's entry of final judgment, Plaintiff may move, upon good cause shown, for leave to reinstate its complaint within thirty (30) days after entry of that judgment.

## CONCLUSION

In sum, the Court has considered the relevant factors under *State Farm Fire & Casualty Co. v. Mhoon*, and finds and concludes that this federal declaratory judgment should be dismissed without prejudice, pending resolution of the issues by the New Mexico state court, based on the Hales's pending state court litigation, and subject to Plaintiff's re-filing for good cause upon certain above-described conditions. The Court has also considered the relevant factors such as the scope of the pending action, the nature of the available defenses in the action and whether all parties' claims can satisfactorily be adjudicated in that proceeding. *ARW Exploration Corp. v. Aguirre*, 947 F.2d 450, 454 (10th Cir. 1991) (citation omitted).

In light of the Court's dismissal of this case, Plaintiff's Motion for Summary Judgment shall be denied at this time, also without prejudice.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Dismissal or Stay **(Doc. 6)** is hereby GRANTED in that this case is DISMISSED WITHOUT PREJUDICE for reasons described in this Memorandum Opinion and Order, and pending adjudication of the coverage issue in the New Mexico state court. In the unlikely event the state court action fails, for any reason, to resolve the coverage controversy prior to the state court's entry of final judgment, Plaintiff may move, upon good cause shown, for leave to reinstate its complaint within thirty (30) days after entry of that judgment;

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment **(Doc. 15)** is DENIED AT THIS TIME WITHOUT PREJUDICE in light of the Court's dismissal of this case without prejudice.

A Final Judgment shall be entered separately.

_________________________________
UNITED STATES DISTRICT JUDGE